**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
*United States Attorney*

Michael C. Hanlon
*Chief, Violent Crimes*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4895*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*
*TTY/TDD: 410-962-4462*
*Michael.Hanlon@usdoj.gov*

September 26, 2011

Gerald Ruter, Esquire

Re:   United States v. Kevin Scott
      Case No. JFM-09-0581

Dear Mr. Ruter:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by September 26, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.    The Defendant agrees to plead guilty to Counts Four and Five of the Second Superseding Indictment now pending against him, which charges him with Hobbs Act robbery and using, carrying and brandishing a firearm during and in relation to a Crime of Violence, in violation of 18 U.S.C. §§ 1951 and 924(c), respectively. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### COUNT FOUR

That on or about July 24, 2008, in the District of Maryland,

      i. The Defendant knowingly obtained or took the property of another, or from the presence of another;

ii. The Defendant took this property against the victim's will, by actual or threatened force, violence or fear of injury, whether immediately or in the future; and

iii. As a result of the Defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed or affected in any way or degree

## COUNT FIVE

That on or about July 24, 2008, in the District of Maryland,

i. The Defendant committed a crime of violence, specifically Interference with Interstate Commerce by Robbery, as charged in Count Four of the Indictment, for which he might be prosecuted in a court of the United States.

ii. The Defendant knowingly brandished a firearm during and in relation to the commission of the crime charged in Count Four of the Indictment.

## Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: Count Four: twenty (20) years imprisonment; a $250,000 fine; and a period of supervised release of three (3) years; Count Five: Life imprisonment, with a mandatory minimum term of seven (7) years imprisonment consecutive to any other imprisonment imposed; a $250,000 fine; and a period of supervised release of five (5) years.  In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

---

[1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.      This Office and the Defendant understand, agree and stipulate to the following Statement of Facts [or to the Statement of Facts set forth in Attachment A hereto] which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.      The parties agree that the facts stated in Attachment A would establish that the Defendant committed the crime of Hobbs Act robbery on July 24, 2008 (as charged in Count Four of the Second Superseding Indictment) as well as the other three robberies described in the statement of facts. Therefore, calculation of the guidelines range as to Count Four for this plea agreement operates as if the Defendant had pled guilty to each of the robbery counts, pursuant to U.S.S.G. § 1B1.2(c). The defendant is pleading guilty only to a single 924(c) count, Count Five.

b.      The base offense level applicable to each of the robbery counts is 20 pursuant to U.S.S.G. § 2B3.1(a). The offense levels are increased as follows:

4

<u>Count Four</u> (Hobbs Act Robbery on July 24, 2008):
Base offense level 20
Increase by 2 levels because the offense involved the physical
restraint of a victim (2B3.1(b)(4))
Adjusted level - **22**

(Robbery on May 21, 2007):
Base offense level 20
Increase by 6 levels because a firearm was used during the offense
Adjusted level - **26**

(Robbery on August 24, 2008)
Base offense level 20
Increase by 6 levels because a firearm was used during the offense
Adjusted level - **26**

(Robbery on September 19-20, 2008):
Base offense level 20
Increase by 2 levels because victims were physically restrained
during the offense
Increase by 6 levels because a firearm was used during the offense
Adjusted level - **28**

<u>Multiple Counts Adjustment</u> (3D1.4)
Units - 3 and 1/2
Increase the highest group offense level (32) by 4 levels.
SUBTOTAL - **32**

If the defendant is found to be a career offender, then his offense
level and criminal history category will be determined by U.S.S.G.
§ 4B1.1.

c.          This Office does not oppose a two-level reduction in the
Defendant's adjusted offense level, based upon the Defendant's apparent
prompt recognition and affirmative acceptance of personal responsibility for
his criminal conduct. This Office may oppose *any* adjustment for acceptance
of responsibility if the Defendant (a) fails to admit each and every item in the
factual stipulation; (b) denies involvement in the offense; (c) gives conflicting
statements about his involvement in the offense; (d) is untruthful with the
Court, this Office, or the United States Probation Office; (e) obstructs or
attempts to obstruct justice prior to sentencing; (f) engages in any criminal
conduct between the date of this agreement and the date of sentencing; or (g)
attempts to withdraw his plea of guilty.

7.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.     This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a) will be raised or are in dispute.

## Rule 11(c)(1)(C) Pleas

9.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a combined sentence (as to both Count Four and Count Five) of no less than 240 months and no more than 300 months (20 to 25 years) imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obligations of the United States Attorney's Office

10.     At the time of sentencing, this Office will recommend a sentence consistent with paragraph 9. At the time of sentencing, this Office will move to dismiss any open counts, including counts contained in the original and Superseding Indictment, against the Defendant.

11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Restitution

12.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all

information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a)     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b)     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 300 months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 240 months' imprisonment.

c)     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

11.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify

a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

12.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

13.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

Michael C. Hanlon
Assistant United States Attorney

    I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9.26.11
_____
Date

Kevin Scott
_____
Kevin Scott

    I am Kevin Scott's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9:26.11
_____
Date

_____
Gerald Ruter, Esquire

9

## ATTACHMENT A

The United States would prove the following facts beyond a reasonable doubt at trial:

The defendant, Kevin Scott, admits that he committed the following armed robberies:

On May 11, 2011, the armed robbery with a shotgun of a 7-Eleven convenience store in Anne Arundel County, Maryland. The defendant used a shotgun to take money from the store and to force the victim, a cashier, to cooperate with him.

On July 24, 2008, the armed robbery of a Wendy's restaurant in Baltimore County, Maryland. The defendant used a shotgun and forced an employee at gunpoint to open the safe to the restaurant and to give him money. The defendant was wearing a ski mask. The defendant then left the store and left the ski mask on the ground near the location. The ski mask was recovered and was found to have the defendant's DNA.

The 7-Eleven and the Wendy's were both businesses that engaged in an affected interstate commerce because they sold products shipped in from out of state and paid a portion of their revenues to out of state companies. The robberies in this case affected and obstructed that interstate commerce activity.

On August 24, 2008, the armed robbery of a guest at a Ramada Inn in Baltimore County, Maryland. The defendant and an accomplice entered the victim's room, pointed a shotgun at him, and searched the room for money.

On September 19-20, 2008, during the late night and early morning, the armed home invasion of a private residence in Baltimore County, Maryland. The defendant and accomplices entered the home believing that one of the people who lived at the house was a drug-dealer. Accomplices tied up members of the family with duct tape, put pillow cases over their head, and searched the house for money.

The government's evidence as to each of these crimes includes DNA taken from the defendant and matched to DNA on the ski mask; testimony from cooperating witnesses; shotgun shells found in the defendant's home and matching shotgun shells found at one of the crime scenes; surveillance video, and other evidence.

10

Michael C. Hanlon
Assistant United States Attorney

      I have read this Statement of Facts and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.   I do not wish to change any part of it.

9 . 26 .11
Date

Kevin Scott

      I am Kevin Scott's attorney.  I have carefully reviewed every part of this Statement of Facts with him.  To my knowledge, his decision to sign it is a voluntary one.

9 . 26 .11
Date

Gerald Ruter, Esquire

11